### WILLIAMS and others v. BARFIELD.

*(Circuit Court, S. D. Georgia, W. D. May 26, 1887.)*

1. INSPECTION—FERTILIZERS—BRAND.
   Under a state statute requiring that commercial fertilizers shall be "branded or tagged with the manufacturer's guarantied analysis," showing the percentages of certain determinations specified in the statute, *held* that, if the analysis branded on the package shows the percentages of ingredients the fertilizer is guarantied to contain, it need not specify other ingredients mentioned in the statute, about which there is no guaranty.

2. SAME—TAGS.
   If a manufacturer's guarantied analysis is branded on the sacks, and it appears that the fertilizer has been inspected, it does not invalidate the sale that tags showing the inspection and analysis were not appended.

*(Syllabus by the Court.)*

*R. K. Hines*, for plaintiffs.
*Hill & Harris*, for defendant.

SPEER, J. This suit was brought on certain promissory notes given by the defendant to the plaintiffs, for a large shipment of a commercial fertilizer known as the "Triumph Guano." On the trial the jury rendered a verdict for the plaintiffs, and the defendant made a motion for a new trial.

The grounds are—*First*, because the court charged the jury as follows:

"The law requires that packages of commercial fertilizers, when offered for sale, must show the manufacturer's guarantied analysis; but this does not mean that the fertilizer must contain all the ingredients mentioned in the statute, but only that it must show the percentages of the ingredients it does contain. If, therefore, you believe from the evidence that the sacks of guano sold by the plaintiffs to the defendant were branded with the manufacturer's guarantied analysis, and that the fertilizer sold had been inspected, it was a compliance with the law, and the sale is legal. If not so branded and inspected, the sale would be illegal, and the plaintiffs cannot recover."

*Secondly*, because the court refused to charge the jury the following request to charge, made by defendant's counsel:

"That if the packages containing the guano did not have affixed a tag, or some evidence of inspection, at the time it was sold, then the plaintiffs cannot recover."

There are other grounds of the motion; but they simply present these two grounds of exception in varying forms.

The law of Georgia relating to this subject is found in section 1553 of the Code:

"Sec. 1553a. All fertilizers, or chemicals for manufacturing or composting the same, offered for sale or distribution in this state, shall have branded upon or attached to each bag, barrel, or package, in such manner as the commissioner of agriculture may by regulation establish, the true analysis of such fertilizer or chemical, showing the percentage of valuable elements or ingredients such fertilizer contains, embracing the following determinations, viz.: Moisture at 212 deg. Fah., available phosphoric acid, insoluble phosphoric acid, ammonia, actual and potential, and potash K. O. And any manufacturer, dealer, or other person, offering any fertilizer or chemical for manufacturing the same, for sale or distribution in this state, without having a brand, tag, or such other device as the commissioner of agriculture may require, showing the analysis thereof, shall be guilty of a misdemeanor, and on conviction of the same shall be punished as prescribed in section 4310 of this Code.

"Sec. 1553b. The analysis so placed upon or attached to any fertilizer or chemicals shall be a guaranty by the manufacturer, agent, or person offering the same, that it contains substantially the ingredients indicated thereby, in the percentages named therein; and said guaranty shall be binding on said manufacturer, agent, or dealer, and may be pleaded in any action or suit at law to show total or partial failure of consideration in the contract for the sale of said fertilizer. It shall be the duty of the commissioner of agriculture to forbid the sale of any acid phosphate, or dissolved bone, which is shown by official analysis to contain less than ten per centum of available phosphoric acid, and also to forbid the sale of any ammoniated superphosphate which is shown by official analysis to contain less than eight per centum of available phosphoric acid and two per centum of ammonia. A copy of the official analysis of any fertilizer or chemical, under seal of the department of agriculture, shall be admissible as evidence in any of the courts of the state, on the trial of any issue involving the merits of said fertilizer."

The manufacturer's guarantied analysis of the triumph guano was branded on the sacks, and expresses the following ingredients:

| | | | | | | |
|---|---|---|---|---|---|---|
| Available phosphate acid, | - | - | - | 8 per cent. to 10 per cent. |
| Insoluble " " | - | - | 8 per cent. to 10 per cent. |
| Ammonia, | - | - | - | - | 2 per cent. to 3 per cent. |
| Potash, | - | - | - | - | - | 10 per cent. to 16 per cent. |

The construction placed by the court upon these statutes is that they intended that the manufacturer's guarantied analysis should be either branded or tagged upon the packages of fertilizers, and, if branded with the analysis, that they need not also be tagged. Further, that the manufacturer of commercial fertilizers is not inhibited from selling a product of his factory because it does not contain all the ingredients referred to in the enumeration mentioned in the statute. Provided the manufacturer's guarantied analysis, branded or tagged on the sack or other package, specifies the element which the fertilizer does contain, it need not refer to those which it does not contain. Nothing has been advanced in the

argument on the motion for new trial which ought, in the opinion of the court, to cause a change of these rulings.

Since this cause was tried, and before the motion for new trial was heard, the supreme court of Georgia, in the case of *Hamlin* v. *Rogers*, decided at October term, 1886, and not yet published, has construed the same statute upon the precise points here involved. The court say, Mr. Justice HALL delivering the opinion:

"All that the party selling is required by law to guaranty is that the fertilizer contains substantially the ingredients indicated by analysis attached to it. * * * Parties have a right to make their own bargains, provided there is nothing in them contravening any requirement of the law."

Further, say the supreme court, "under the circumstances, the court committed no error in refusing to charge the following: 'If you believe from the evidence that the fertilizers did not have inspection tags on the sacks, then the plaintiffs cannot recover,'" and while they qualified, to a certain extent, this holding by reference to the particular facts of that case, and say in conclusion, "whether their [*i. e.*, the tags] absence has the effect of showing that the sale was illegal, is questionable," this court will go further, and hold, as before stated, that when the manufacturer's guarantied analysis is branded upon the sack, and it sufficiently appears that the fertilizer has been inspected, the contract of parties will not be defeated, and the defendant exempted from paying for an article which he has received, simply because the tags are not appended to the sacks.

It was said by counsel for defendant that this is a statute for the prevention of fraud, and it must be liberally construed to accomplish that object. That is, no doubt, true; but it should also be so construed that when the purchaser of a commercial fertilizer has bought what the vendor offers to sell, with the opportunity to know what he is buying, he may not be exempted by the courts from paying what he has promised, except upon clear and satisfactory proof that the seller has violated the law. While it is highly essential that the interests of agriculture should be protected, it is just as essential that a creditor should have the means of collecting the proceeds of a lawful contract, and that the debtor should pay his just debts.